# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TILIKUM, KATINA, CORKY, KASATKA, and ULISES, five orcas,<br><br>Plaintiffs,<br><br>by their Next Friends, People for the Ethical Treatment of Animals, Inc., Richard "Ric" O'Barry, Ingrid N. Visser, Ph.D., Howard Garrrett, Samantha Berg, and Carol Ray,<br><br>vs.<br><br>SEA WORLD PARKS & ENTERTAINMENT, INC. and SEA WORLD, LLC,<br><br>Defendants. | CASE NO. 11cv2476 JM(WMC)<br><br>ORDER GRANTING MOTION TO DISMISS |

Defendants Sea World Parks & Entertainment, Inc. and Sea World, LLC, (collectively "Sea World") move to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs, five orca whales, Tilikum, Katina, Corky, Kasatka and Ulises, acting by their Next Friends, People for the Ethical Treatment of Animals, Inc., Richard "Ric" O'Barry, Ingrid N. Visser, Ph.D., Howard Garrrett, Samantha Berg, and Carol Ray (collectively "Next Friends"), oppose the motion. For the reasons set forth below, the court dismisses the action with prejudice and instructs the Clerk of Court to close the file.

///

**BACKGROUND**

On October 25, 2011, Next Friends commenced this action by filing a complaint for declaratory and injunctive relief, seeking a declaration that the named wild-captured orcas are being "held by the Defendants in violation of Section One of the Thirteenth Amendment to the Constitution of the United States, which prohibits slavery and involuntary servitude." (Compl. ¶1).

Plaintiffs are members of the Orcinus orca or "killer whale" species, the largest species of the dolphin family. (Compl. ¶10). Plaintiffs are allegedly being "held captive" by Sea World at their entertainment facilities in Orlando, Florida, and San Diego, California. (Compl.¶¶1, 5). Next Friends generally allege that the orcas, captured by Sea World off the coasts of British Columbia and Iceland, engage in many complex social, communicative, and cognitive behaviors. (Compl. ¶10-18). Next Friends allege that the confinement of the orcas in barren concrete tanks negatively impacts them in many ways, including the suppression of "Plaintiffs' cultural traditions and deprives them of the ability to make conscious choices and of the environmental enrichment required to stimulate Plaintiffs mentally and physically for their well-being." (Compl. ¶19). Next Friends identify that the orcas live substantially shortened lives in captivity (8.5 years in captivity versus up to 65 years in the wild), experience distress because of the concrete, acoustically reflective tank walls, and allegedly "display physiological and behavioral abnormalities indicative of psychological distress and emotional disturbance." (Compl. ¶¶19-27).

In broad brush, Next Friends allege that Plaintiff orcas "were born free and lived in their natural environment until they were captured and torn from their families." (Compl. ¶31). While in captivity, the orcas often suffer severe distress. (Compl. ¶¶32-66). The unnatural conditions under which the orcas are held in captivity - "[d]eprived of liberty, forced to live in grotesquely unnatural conditions and perform tricks," (Compl. ¶55) - has resulted in "extreme physiological and mental stress and suffering while, at the same time, Defendants and their predecessors have reaped millions of dollars in profits from their slavery and involuntary servitude." (Compl. ¶¶ 46, 55, 62, 66).

Based upon the above generally described conduct, Next Friends contend that the retention of the orcas in captivity violates the slavery and involuntary servitude provisions of the Thirteenth Amendment (the first and second causes of action, respectively). Next Friends contend that the orcas

are being held as slaves because they are (1) held physically and psychologically captive; (2) without the means of escape; (3) separated from their homes and families; (4) unable to engage in natural behaviors and determine their own course of action or way of life; (5) subjugated to the will and desires of Sea World; (6) confined in unnatural, stressful and inadequate conditions; and (7) subject to artificial insemination or sperm collection for the purposes of involuntary breeding. (Compl. ¶106).

On January 24, 2012, the court granted the application of Center for the Expansion of Fundamental Rights, Inc. ("CEFR") to appear as amicus curiae. (Ct. Dkt. 21). While the court permitted CEFR to file a memorandum, the court denied its request to present oral argument.

## DISCUSSION

**Legal Standards**

Whether the court treats Sea World's motion as one arising under either Rule 12(b)(1) (dismissal for lack of subject matter jurisdiction) or Rule 12(b)(6) (dismissal for failure to state a claim), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). In considering a motion to dismiss for lack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

Sea World argues that Plaintiffs lack Article III standing to bring this action and, alternatively, Next Friends lack capacity to bring this action Pursuant to Rule 17 of the Federal Rules of Civil Procedure. To satisfy Article III,

> a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

Cetacean Community v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc., 528 U.S. 167, 180–81 (2000)). An action brought by a plaintiff

who lacks standing is not a "case or controversy" under Article III, resulting in the court's lack of subject matter jurisdiction to entertain the action. Id. (quoting Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101 (1998)).[1] In the absence of an applicable statute authorizing Plaintiffs to bring a private right of action, whether Plaintiffs suffer a cognizable constitutional injury turns on whether the Thirteenth Amendment affords any legal protection to Plaintiffs.[2]

**Applicability of the Thirteenth Amendment to Plaintiffs**

At the outset, the court notes that Next Friends recognize that the issues raised are of first impression and that there are no authorities applying the Thirteenth Amendment to non-persons. Next Friends "are asking the Court to find that the specific acts of domination, exploitation, and coercion to which they [the orcas] are subjected are repugnant to the Thirteenth Amendment." (Oppo. at p.2:11-13). For the reasons set forth below, the court concludes that the Thirteenth Amendment only applies to "humans" and therefore affords no redress for Plaintiffs' grievances. As Plaintiffs lack standing to bring a Thirteenth Amendment claim, the court dismisses the action for lack of subject matter jurisdiction. See Citizens for a Better Environment, 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.")

The court begins its inquiry into the Thirteenth Amendment by looking at the Amendment's plain and ordinary meaning, historical context, and judicial interpretations. See United States v. Classic, 313 U.S. 299, 317-18 (1941) ("we turn to the words of the Constitution read in their historical

---

[1] The court notes that while "[a]nimals have many legal rights, protected under both federal and state laws" which provide for the humane treatment and criminalizing cruelty to animals, only human beings have standing to bring such actions. Cetacean, 386 F.3d at 1175. "It is obvious that an animal cannot function as a plaintiff in the same manner as a juridically competent human being." Id. at 1176. Next Friends cite no statute authorizing Plaintiffs to bring a private right of action. Instead, Next Friends contend that they have constitutional standing under the Thirteenth Amendment.

[2] The court similarly concludes, for purposes of Rule 17, that whether Next Friends may bring this action on behalf of Plaintiffs turns on whether Next Friends are "entitled under the substantive law to enforce the right sued upon." United States v. City of New York, 129 S.Ct. 2230, 2235 (2009). The Rule 17 inquiry, like the standing inquiry, requires the court to determine whether the substantive law, the Thirteenth Amendment, affords Plaintiff any relief. As discussed herein, the substantive law sued upon - - the Thirteenth Amendment - - affords no redress to Plaintiffs.

setting as revealing the purpose of its framers, and in search for admissible meanings of its words which, in circumstances of their application, will effectuate those purposes"): <u>Rhode Island v. Massachusetts</u>, 37 U.S. 657, 723 (1938).

At the conclusion of the Civil War, the institution of slavery perished. "It perished as a necessity of the bitterness and force of the conflict." <u>Slaughter-House Cases</u>, 83 U.S. 36, 68 (1872). Enacted in 1865, the Thirteenth Amendment provides:

> 1. Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction.
>
> 2. Congress shall have power to enforce this article by appropriate legislation.

U.S. Const. Amend. XIII. This court's inquiry is straight-forward. The only reasonable interpretation of the Thirteenth Amendment's plain language is that it applies to persons, and not to non-persons such as orcas. Both historic and contemporary sources reveal that the terms "slavery" and "involuntary servitude" refer only to persons. In 1864, the term "slavery" was defined as "[t]he condition of a slave; the state of entire subjection of one person to the will of another." Noah Webster, <u>A Dictionary of the English Language</u>, 1241 (G. & C. Merriam Co. 1864). The Supreme Court, in the <u>Slaughter-House Cases</u>, made clear that the phrase "servitude" applies only to persons. The Supreme Court noted that the term "servitude" is qualified by the term "involuntary" - "which can only apply to human beings." <u>Slaughter-House Cases</u>, 83 U.S. at 69. The clear language and historical context reveal that only human beings, or persons, are afforded the protection of the Thirteenth Amendment.

Further support that the Thirteenth Amendment applies only to persons is found in the qualifying phrase "except as a punishment for crime." The Supreme Court noted that the "punishment for crime" language "gives an idea of the class of servitude" or slavery that is meant by the Amendment. <u>Id.</u> As only persons are subject to criminal convictions, the Amendment was designed to apply to persons. In commenting on the applicability of the Thirteenth Amendment, the Supreme Court noted that "this grand yet simple declaration of personal freedom of all the human race," 83 U.S. at 69, brought to an end to institutionalized slavery in the United States.

The court notes that the Emancipation Proclamation issued by President Lincoln on January

1, 1863 provides further support that the terms "slavery" and "involuntary servitude" apply only to persons. The Proclamation states, in relevant part,

> . . . all <u>persons</u> held as slaves within any State or designated part of a State, the people whereof shall then be in rebellion against the United States, shall be then, thenceforward, and forever free; and the Executive Government of the United States, including the military and naval authority thereof, will recognize and maintain the freedom of such <u>persons</u>, and will do no act or acts to repress such <u>persons</u>, or any of them in any efforts they may make for their actual freedom. (Emphasis added).

In sum, the court concludes, based upon the plain language of the Thirteenth Amendment, its historical context, and judicial interpretations, that the Thirteenth Amendment does not afford Plaintiffs any relief as non-humans. As there are no circumstances under which Plaintiffs can state a Thirteenth Amendment claim, the court dismisses the action under Rule 12(b)(1) for lack of subject matter jurisdiction.

In the main, Next Friends recognize that the Thirteenth Amendment only applies to persons. In arguing for the creation of new rights for the orcas, Next Friends identify that constitutional principles have been extended over the years to apply to changing times and conditions. (Oppo. at pp. 7:13 - 11:27). Next Friends cite numerous authorities in the context of the right to privacy, <u>i.e.</u> <u>Griswold v. Connecticut</u>, 381 U.S. 479 (1965), the separate but equal doctrine, <u>i.e.</u> <u>Brown v. Board of Education</u>, 347 U.S. 483 (1954), sex discrimination, <u>i.e.</u> <u>United States v. Virginia</u>, 518 U.S. 515, 531 (1996), and the evolution of constitutional protections for criminal defendants, <u>i.e.</u> <u>Thompson v. Oklahoma</u>, 487 U.S. 815 (1988); <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). The primary difficulty with Next Friends' argument for the expansion of the scope of the Thirteenth Amendment is that the Amendment is not reasonably subject to an expansive interpretation. For example, the above cited authorities challenged the Fourteenth Amendment's "due process" or "equal protection" clauses, or the Eighth Amendment's cruel and unusual punishment clause. As noted by Next Friends, what constitutes "due process," "equal protection," or "cruel and unusual punishment," are fundamental constitutional concepts subject to changing conditions and evolving norms of our society. <u>See</u> <u>Missouri v. Holland</u>, 252 U.S. 416, 433-34 (1920). However, that is not the case with the Thirteenth Amendment.

Unlike the other constitutional amendments relied upon by Next Friends, the Thirteenth

Amendment targets a single issue: the abolition of slavery within the United States. The Amendment's language and meaning is clear, concise, and not subject to the vagaries of conceptual interpretation - "Neither slavery nor involuntary servitude. . . shall exist within the United States or any place subject to their jurisdiction." As "slavery" and "involuntary servitude" are uniquely human activities, as those terms have been historically and contemporaneously applied, there is simply no basis to construe the Thirteenth Amendment as applying to non-humans.

**Standing**

The Constitution limits the federal judicial power to designated "cases" and "controversies." U.S. Const., Art III, §2. SEC v. Medical Committee for Human Rights, 404 U.S. 403 (1972) (federal courts may only entertain matters that present a "case" or "controversy" within the meaning of Article III). As indicated above, a party invoking federal jurisdiction has the burden to show the likelihood that the alleged injury will "be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Friends of the Earth, 528 U.S. at 181. Here, there is no likelihood of redress under the Thirteenth Amendment because the Amendment only applies to humans, and not orcas. Because Plaintiffs are without standing to bring this action, no "case" or "controversy" exists and this court lacks subject matter jurisdiction. Accordingly, this case is dismissed under Rule 12(b)(1).

**CONCLUSION**

Even though Plaintiffs lack standing to bring a Thirteenth Amendment claim, that is not to say that animals have no legal rights; as there are many state and federal statutes affording redress to Plaintiffs, including, in some instances, criminal statutes that "punish those who violate statutory duties that protect animals." Cetacean, 386 F.3d at 1175. While the goal of Next Friends in seeking to protect the welfare of orcas is laudable, the Thirteenth Amendment affords no relief to Plaintiffs.

In sum, the court dismisses the action with prejudice for lack of subject matter jurisdiction. The Clerk of Court is instructed to close the file.

**IT IS SO ORDERED.**

DATED: February 8, 2012

_____
Hon. Jeffrey T. Miller
United States District Judge